Argued and submitted April 2, reversed and remanded August 26, 1986

## SOUTH BEACH MARINA, INC.,
*Appellant,*

## PORT OF NEWPORT,
*Intervenor/Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2053, 2087; SC S32016, S32017)

724 P2d 788

A. R. McMullen, Judge Pro Tempore.

By Order of the Supreme Court allowing Intervenor to proceed as Appellant, J. Christopher Minor and Evan P. Boone, Newport, argued the cause for the Port of Newport. On the brief and abstract of record were Evan P. Boone and Minor, Yeck, Beeson & Boone, P.C., Newport. On the reply brief were J. Christopher Minor, Evan P. Boone and Minor, Yeck, Beeson & Boone, P.C., Newport.

South Beach Marina, Inc., Appellant, did not file a brief.

Ted F. Barbera, Assistant Attorney General, Salem, argued the cause for Respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

CARSON, J.

## CARSON, J.

The central issue in this case concerns the availability of an exemption from ad valorem property tax for property owned by a port district and leased to a private marina. The taxing authorities denied the exemption. The Oregon Tax Court affirmed the denial of the exemption. Upon review anew upon the record, we reverse.

Because of the somewhat lengthy cast of players in this tax proceeding, it may be helpful first to identify the participants. The owner of the subject real property is the Port of Newport (the Port). The lessee of the property is a corporation, South Beach Marina, Inc. (the Marina). The Lincoln County Assessor, the Lincoln County Board of Equalization and the State Department of Revenue (the Department) are the taxing authorities participating in parts of this proceeding.

## PROCEDURE

■ This case began as two separate cases filed by the Marina for different tax years. Tax Court case No. 2053 concerned tax year 1981-82; case No. 2087 concerned tax years 1982-83 and 1983-84. The two cases were consolidated for the purposes of trial, but not for all purposes. The Tax Court issued separate judgments in the two cases. ORAP 2.03(2) specifically requires that two notices of appeal be filed in such event.[1] Two notices of appeal were filed herein, but the notice for tax year 1981-82 was not timely filed within the 30 days required by ORS 305.445,[2] 19.026(1),[3] and 19.033(2)(b).[4] The

---

[1] ORAP 2.03(2) provides:

"If the trial court consolidates causes for trial but enters separate judgments, one for each case number, then separate notices of appeal must be filed if a party wishes to appeal from each."

[2] ORS 305.445 provides:

"The sole and exclusive remedy for review of any decision or order of the tax court shall be by appeal to the Supreme Court. Jurisdiction hereby is vested in the Supreme Court to hear and determine all appeals from final decisions and final orders of the tax court, except with respect to the small claims division of the tax court. Such appeals, and the review of final decisions and final orders of the tax court, shall be in accordance with the procedure in equity cases on appeal from a circuit court, but without regard to the sum involved. Upon such appeal and review, the Supreme Court shall have power to affirm, modify or reverse the order or decision of the tax court appealed from, with or without remanding the case for

notice of appeal for tax years 1982-83 and 1983-84 was filed timely. The subsequent motion to this court to consolidate the two cases improvidently was granted on the basis of the lawyers' stipulation that the cases had been consolidated below. This subsequent order allowing consolidation cannot cure the jurisdictional defect of the untimely filing of the notice of appeal in the first case. For this reason, the appeal of the Tax Court case for 1981-82 (Supreme Court No. S32016) hereby is dismissed.

## MERITS

We now turn to the case for tax years 1982-83 and 1983-84 (Supreme Court No. S32017). At the times relevant to this appeal, the Marina leased from the Port real property and improvements consisting of a full service marina facility with 600 boat slips, docks, wharves, breakwaters, walkways, pilings, a dry boat storage building capable of storing from 150 to 160 boats, a public boat ramp, parking lot, restrooms, shower and laundry facilities, an office building, convenience store and other marine-related improvements. The marina facility was operated and maintained by the Marina. The boat slips and dry boat storage units were sub-leased to individual boat owners. The vast majority of the boats moored or stored at the marina facility were pleasure craft used for recreational purposes.

The Lincoln County Assessor assessed ad valorem property taxes against the Marina on the entire marina facility. The Marina appealed to the Department of Revenue seeking, *inter alia,* to exempt the marina facility in its entirety, under ORS 307.120(1)(a). ORS 307.120(1)(a) provides an exemption from property tax for real and personal property

further hearing, as justice may require."

[3] ORS 19.026(1) provides:

"* * * [T]he notice of appeal shall be served and filed within 30 days after the entry of the judgment appealed from."

[4] ORS 19.033(2)(b) provides:

"The following requirements of ORS 19.023, 19.026 and 19.029 are jurisdictional and may not be waived or extended:

"* * * * *

"(b) Filing of the original of the notice of appeal with the Court of Appeals as provided in ORS 19.023(3), within the time limits prescribed by ORS 19.026."

owned by a port that is "[l]eased, rented or preferentially assigned for the purpose of the berthing of ships, barges or other watercraft * * * or the discharging, loading or handling of cargo therefrom or for storage of such cargo directly incidental to trans-shipment."

The hearing before the Department focused on whether the exemption would apply to the berthing of pleasure craft. The Department's opinion and order stated the issue as follows: "The real question is whether pleasure craft are included within the term 'watercraft' as used in ORS 307.120." The Department conceded that "there is no question that the boats are 'berthed.'" The Department ruled that the exemption for berthing of "ships, barges or other watercraft" in ORS 307.120(1)(a) does not apply to the berthing of pleasure craft.

The Marina appealed to the Tax Court and the Port intervened on the day of trial. At trial, the Marina and the Port framed the issue as whether the term "other watercraft" in ORS 307.120(1)(a) means all boats and vessels generally, or whether it is limited to vessels capable of carrying commercial cargo. The Marina and the Port offered evidence intended to show that the breakwaters, fuel dock, office, convenience store, restrooms, showers, laundromat, and parking lot were all directly related to recreational boat use at the marina facility. The Department continued to contend that the exemption only applied to commercial ships, barges and watercraft. As best the record shows, the Department raised at trial, for the first time in this case, the sub-issue of the additional restriction of the exemption to the "berthing" of watercraft.

While the Tax Court had the case under advisement, this court decided *Port of Coos Bay v. Dept. of Rev.*, 298 Or 229, 691 P2d 100 (1984). Based on the *Port of Coos Bay* decision, which construed the term "berthing" in ORS 307.120(1)(a) to mean moored at a wharf or lying at anchor, the Tax Court in its opinion observed that the subject property leased by the Port to the Marina for the operation of the marina facility included both property which would be exempt under ORS 307.120(1)(a) and property which would not be exempt.

Although the Tax Court judge made some general observations about what would or would not be exempt, he concluded that:

"* * * [T]o solve this matter would be a matter of going back and determining the value of the particular property and how it is used on an individual basis. * * * I do not feel that what little evidence there was on segregation would be adequate to make a segregation and assessment value on any of the individual items."

The Marina and the Port filed a petition for rehearing in the Tax Court, arguing that the case should be reopened to receive evidence on the value of the various marina facilities, in order to segregate the values of the exempt from the non-exempt property in light of *Port of Coos Bay.* The Tax Court denied the petition for rehearing because the issue of segregation was never raised at trial.

The Marina appealed to this court. The Port was allowed to proceed as appellant after the Marina was found in default for failure to file a brief.[5] The Port first assigned as error the Tax Court's failure to conduct a post-opinion hearing or to remand the case to the Department to take evidence on the value of the various marina facilities. The Port also assigned as error the Tax Court's ruling that the exemption in ORS 307.120(1)(a) does not apply to the entire marina facility.

■    Relative to the first assignment of error, the underlying issue which must first be resolved is whether the exemption in ORS 307.120(1)(a) is limited to berthing commercial vessels or whether it applies to pleasure craft. In order to say that some of the property leased to the Marina by the Port could be exempt as property used for "berthing," the Tax Court necessarily must have found that pleasure craft are included within the statutory exemption.[6]

We begin by considering ORS 307.120(1)(a) in its proper statutory context. ORS 307.090(1) states the general

---

[5] The Port asserts that the Marina failed to make certain lease payments and that, through court action, the subject property has been restored to the Port.

[6] We expressly declined to decide this issue in *Port of Coos Bay v. Dept. of Rev.,* 298 Or 229, 691 P2d 100 (1984), because it was not necessary for a decision in that case.

rule that all property of ports that is used or intended for corporate purposes is exempt from taxation. ORS 307.110(1) then provides an exception for the property of ports that is leased to persons whose real property is taxable. Finally, ORS 307.120(1)(a) provides an exception to the exception—an exemption for real and personal property owned by any port

"* * * to the extent to which such property is:

"(a) Leased, rented or preferentially assigned for the purpose of the berthing of ships, barges or other watercraft (exclusive of property leased, rented or preferentially assigned primarily for the purpose of the berthing of floating homes as defined in ORS 488.705), or the discharging, loading or handling of cargo therefrom or for storage of such cargo directly incidental to trans-shipment;"

The exemption (except for the parenthetical reference to floating homes) was enacted in 1949. Or Laws 1949, ch 395, § 2. Unfortunately, no legislative history has survived. At the hearing below, the Department applied two principles of statutory construction to determine that the words "other watercraft" did not apply to pleasure craft. First, the Department reasoned that the first phrase in ORS 307.120(1)(a) must be read in para materia with the second phrase which refers to the discharging, loading, handling and storage of "cargo." The plain meaning of "cargo," said the Department, refers to the movement of commercial goods, not the movement of people or pleasure craft in leisure-time activities. Second, the Department applied the principle of statutory construction ejusdem generis to the term "other watercraft" and concluded that it refers to other cargo-carrying vessels in the same class as ships and barges, and not to pleasure craft.

On appeal to this court, the Department offered additional reasons to support its contention that the exemption enacted in 1949 was intended to apply only to commercial watercraft. One is the magazine Oregon Voter, dated March 26, 1949, which suggests that one reason for the tax exemption for leased port facilities was to enable Oregon ports to compete successfully with subsidized ports in California and Washington. Id. at 19-20. Another possible indication that legislative intent in 1949 was focused on commercial watercraft is

the fact that ports were not given the statutory authority to build marinas until 1969.[7]

These arguments by the Department lend support to its contention that the legislature did not have marinas for pleasure boats in mind when it enacted the exemption for property leased for the purpose of "berthing * * * other watercraft." What the legislature "had in mind," however, often is not realistically the right question. Statutes ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention.[8] For instance, lawmakers may believe that defining a narrower class for coverage under a statute would cause more problems in interpretation and administration and would be less efficient than to use broad, residual language that avoids such problems. When the express terms of a statute indicate such broader coverage, it is not necessary to show that this was its conscious purpose. In the absence of an affirmative showing that the narrower meaning actually was intended by the drafters, we shall take the legislature at its word and give "watercraft" its ordinary meaning. *See Wimer v. Miller,* 235 Or 25, 30, 383 P2d 1005 (1963); *Boling v. Nork,* 232 Or 461, 465, 375 P2d 548 (1962). The term "watercraft" is expansive, and its plain and ordinary meaning necessarily includes pleasure boats.[9] Therefore, we hold that the exemption in ORS 307.120(1)(a) applies to port property leased for the purpose of berthing pleasure craft.

■     The next issue concerns the Tax Court's failure to

---

[7] Or Laws 1969, ch 497, § 3, codified at ORS 777.132(2).

[8] The Port argues that the specific exclusion of floating homes, added to ORS 307.120(1)(a) by Oregon Laws 1977, chapter 615, section 1, indicates that the legislature did not intend the exemption only to apply to commercial watercraft. We caution, however, that the view of the 1977 legislature as to the meaning of a 1949 statute is not definitive. A later legislature's interpretation of an earlier legislature's intent may be incorrect.

[9] *See, e.g.,* ORS 488.011(2) which, although not enacted until 1959, defines "boats" as:

"* * * every description of watercraft used or capable of being used as a means of transportation on the water, but does not include aircraft equipped to land on water * * *."

conduct a post-opinion hearing or to remand the case to the Department to take evidence on the use and value of the various marina facilities in order to determine which are leased for the purpose of "berthing" watercraft. The Tax Court denied the petition for rehearing on the ground that the Port and the Marina tried the case on the issue of total exemption and presented little evidence on the use and value of specific marina facilities. The court concluded that evidence of the use and value of specific parts of the Marina was available at trial but was not put into evidence, and therefore that the Port and the Marina should not receive a second opportunity to do so.

It is generally true that a party may not withhold part of its evidence and, upon meeting with an adverse ruling at the conclusion of the case, seek an additional chance to present it. *O'Brien v. Dunigan,* 187 Or 227, 242, 210 P2d 567 (1949). However, that is not what happened below. The issue before the Department was whether the exemption in ORS 307.120(1)(a) applied to the berthing of pleasure boats. In its opinion and order, the Department conceded that there was no question that the boats at the Marina were "berthed." The question, according to the Department, was whether pleasure craft are included in the term "watercraft." Because of this concession by the Department and because ORS 305.425(3) requires that the issues of fact and law before the Tax Court be limited to those raised by the parties in the appeal to the Department, the Port and the Marina properly framed the issue at trial as whether the exemption applied to pleasure boats.

After reviewing the record in this case anew upon the record, we conclude that the posture of this case on appeal from the Department blocked the full development of the issues in the Tax Court. The Department's concession that the boats at the Marina were "berthed," coupled with the posture of the case on appeal to the Tax Court, excuses the Port's failure to provide an adequate evidentiary foundation to support its burden of proof on the issue of which parts of the marina facility were leased for the purpose of "berthing" watercraft. Furthermore, the Department must bear equal responsibility for the way the case was tried. Both sides resisted attempts by the other side to elicit information at trial about the use and value of various parts of the marina facility.

The Department correctly states that neither the Marina nor the Port asked the Tax Court to remand the case to the Department. However, ORS 305.425(3) provides:

"In the case of proceedings to set aside an order or determination of the department, except as provided in ORS 305.560(1), the issues of fact and law shall be restricted to those raised by the parties in the appeal to the department. *If the court finds that other issues are important to a full determination of the controversy, it shall remand the whole matter to the department for further determination and the issuance of a new order,* unless the parties and the department stipulate to the determination of such other issues without remand to the department. If the court orders the cause remanded to the department, such order shall constitute a final order subject to appeal to the Supreme Court as provided for in ORS 305.445. All hearings and proceedings in the tax court shall be in accordance with the rules of practice and procedure promulgated by the court, which, except with respect to the small claims division, shall conform, as far as practical to the rules of equity practice and procedure in this state." (Emphasis supplied.)

We read the Tax Court opinion as finding that other issues (specifically the use and value of various marina facilities) are important to a full determination of this controversy. In such circumstances, absent a stipulated determination by the parties, ORS 305.425(3) mandates a remand to the Department for further determination and for the issuance of a new order. The Tax Court erred in not remanding to the Department for further determination.

As for its second assignment of error, the Port argues that the exemption provided in ORS 307.120(1)(a) for the "berthing" of watercraft should apply to the entire marina facility. In *Port of Coos Bay v. Dept. of Rev., supra,* we construed the exemption in ORS 307.120(1)(a) for port property leased for the purpose of "berthing" watercraft. In that case, we looked to the plain language of the statute to discern the legislature's intent with respect to the word "berthing." We concluded that the legislature contemplated an exemption only for property leased for the purpose of mooring watercraft at a wharf or lying at anchor. In the *Port of Coos Bay* case, the exemption was held not to apply to a dry boat storage building 350 feet from the water or to the asphalt-paved area that provided access to it. The Tax Court herein correctly ruled

that the evidence in the record was insufficient to prove which parts of the marina facility were leased for the purpose of "berthing" watercraft.

The decision of the Tax Court is reversed. The case is remanded to the Tax Court with instructions to remand to the Department, pursuant to ORS 305.425(3), to determine fully which parts of the marina facility were leased for the purpose of "berthing" watercraft and to determine the values thereof.