Argued and submitted November 2, decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings December 7, 2006

## Brenda HAMILTON,
*Petitioner on Review,*

*v.*

## George PAYNTER,
dba Seahawk Seafood;
Carvalho Fisheries, Inc.;
and William Carvalho,
*Respondents on Review.*

## (CC 03CV0551; CA A125029; SC S53276)

149 P3d 131

David M. Hernandez, Hernandez & Associates, LLC, Bandon, argued the cause and filed the briefs for petitioner on review.

John L. Langslet, Martin, Bischoff, Templeton, Langslet & Hoffman, LLP, Portland, argued the cause for respondent on review George Paynter. With him on the brief was Camille Tourje.

Robert A. Ford, Kurtz, Ford & Johnson, LLP, Eugene, argued the cause and filed the brief for respondents on review Carvalho Fisheries, Inc., and William Carvalho.

W. Eugene Hallman, Hallman & Dretke, Pendleton, argued the cause and filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

In this case, we consider whether a payment to an injured party tolled the statute of limitations. The trial court dismissed the action, because it concluded that the payment did not toll the statute. The Court of Appeals affirmed. *Hamilton v. Paynter*, 204 Or App 119, 129 P3d 203 (2006). We hold that the payment did toll the statute of limitations, and we therefore reverse the decision of the Court of Appeals and the judgment of the circuit court.

■       Because the trial court granted a motion to dismiss the complaint, we treat the allegations in the complaint as true. *See Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 163, 144 P3d 211 (2006) (on motion to dismiss, court "assume[s] the truth of all well-pleaded facts alleged in the complaint"). Brenda Hamilton, the petitioner on review, filed an action against defendants George Paynter, doing business as Seahawk Seafood; Carvalho Fisheries, Inc.; and William Carvalho. Hamilton's first amended complaint alleged three facts relevant to this appeal. First, it alleged that Hamilton had been injured on August 19, 2001, when defendant Paynter rear-ended her vehicle with a forklift owned by defendants Carvalho and Carvalho Fisheries. Second, the complaint alleged that, on November 2, 2001, defendants paid Hamilton $1,000 as a "partial payment" for the injuries that Hamilton had suffered in the accident. And finally, the complaint alleged that none of defendants ever gave Hamilton written notice of when the statute of limitations would expire on her cause of action.

Hamilton did not file her action until November 28, 2003, two years and three months after the accident.

Defendants moved to dismiss the complaint, contending that it was barred by the two-year statute of limitations in ORS 12.110(1).[1] Hamilton argued, however, that the $1,000 payment by defendants had tolled the statute of limitations. She relied on ORS 12.155 (quoted below), which tolls

---

[1] ORS 12.110 provides, in part:

"(1) An action * * * for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years * * *."

the statute of limitations if a "person" makes an "advance payment" without giving written notice of the expiration date of the statute of limitations.

Defendants responded that ORS 12.155 applied to only *insurers* who made advance payments. *See Minisce v. Thompson*, 149 Or App 746, 756, 945 P2d 582 (1997) (Court of Appeals concluded that "the advance payment statutes do not toll the statute of limitations outside the setting of third-party claims against insurers"). Because defendants were not insurers, defendants contended, ORS 12.155 did not toll the statute of limitations.

The trial court ruled for defendants, and Hamilton appealed. The Court of Appeals' majority relied on *Minisce* and affirmed. *Hamilton*, 204 Or App at 120. Judge Wollheim concurred separately on *stare decisis* grounds; he suggested, however, that *Minisce* incorrectly had interpreted ORS 12.155. *Id.* at 120-28 (Wollheim, J., concurring). We allowed review.

The question here involves the correct interpretation of ORS 12.155, and we begin with the text of that statute.

ORS 12.155 provides:

"(1)  If the person who makes an advance payment referred to in ORS 31.560 or 31.565 gives to each person entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. The notice required by this subsection shall be in such form as the Director of the Department of Consumer and Business Services prescribes.

"(2)  If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period

limited for commencement of the action by the statute of limitations."

The term "advance payment" is defined in ORS 31.550:

"As used in ORS 12.155 and 31.550 to 31.565, 'advance payment' means compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor."

ORS 12.155 cross-references two other statutes, ORS 31.560 and ORS 31.565.[2] The first statute, ORS 31.560, provides that an advance payment on a personal injury or death claim does not constitute an admission of liability:

"(1)   Advance payment made for damages arising from the death or injury of a person is not an admission of liability for the death or injury by the person making the payment unless the parties to the payment agree to the contrary in writing.

"(2)   For the purpose of subsection (1) of this section, advance payment is made when payment is made with or to:

"(a)   The injured person;

"(b)   A person acting on behalf of the injured person with the consent of the injured person; or

"(c)   Any other person entitled to recover damages on account of the injury or death of the injured or deceased person."

The second statute cross-referenced by ORS 12.155, ORS 31.565, similarly provides that an advance payment on a property damage claim does not constitute an admission of liability:

"Any advance payment made for damages arising from injury or destruction of property is not an admission of liability for the injury or destruction by the person making the

---

[2] Both of those statutes have been renumbered twice. ORS 31.560 was originally numbered as ORS 41.960 and later renumbered as ORS 18.520. ORS 31.565 was originally numbered as ORS 41.970 and later renumbered as ORS 18.530. The opinions quoted below often refer to those statutes by one or the other set of those numbers. To avoid confusion, we have altered those references to use the current statutory numbers.

payment unless the parties to the payment agree to the contrary in writing."

■     In this case, the parties do not dispute that the payment to Hamilton was an "advance payment" as defined in ORS 31.550. The dispute here turns on whether defendants were "person[s] who [made] an advance payment" within the meaning of ORS 12.155.

The Oregon Revised Statutes specifically define the word "person":

"As used in the statute laws of this state, unless the context or a specially applicable definition requires otherwise:

"* * * * *

"(5)   'Person' includes individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies."

ORS 174.100. All the defendants are "persons" within that definition. Defendants, then, must identify some statutory context to show that the word "person," as used in ORS 12.155, has a different and narrower definition. *See* ORS 174.100 (its definition of "person" applies "unless the context * * * requires otherwise").

Defendants claim to find that context in the last sentence of ORS 12.155(1). That sentence requires that the notice of the statute of limitations "be in such form as the Director of the Department of Consumer and Business Services prescribes." Defendants note that the Department of Consumer and Business Services (DCBS) oversees insurers, not the general public.[3] Thus, they contend, ORS 12.155 must apply to only advance payments by insurers.

In our view, however, that sentence is entirely consistent with the broad definition of "person" found in ORS 174.100. The plain text of ORS 12.155 simply requires any "person who makes an advance payment," whether an

---

[3] The Department of Consumer and Business Services is responsible for, among other things, administering the insurance laws. *See, e.g.*, ORS 731.016 ("The Insurance Code * * * shall be administered and enforced by the Director of the Department of Consumer and Business Services to give effect to the policy stated in ORS 731.008.").

insurer or not, to use the DCBS's form. The sentence that mandates use of a DCBS form does not "require[ ]" a narrower definition of the word "person." ORS 174.100.

Defendants do not identify any other context that would limit the meaning of the word "person" to "insurer." Defendants claim, however, that two prior decisions of this court support their argument. We conclude that both decisions are distinguishable and therefore give defendants no aid here.

Defendants first rely on *Duncan v. Dubin*, 276 Or 631, 556 P2d 105 (1976). In that case, this court concluded that the text and legislative history of ORS 12.155 and the related advance payments statutes showed that

> "the legislation had a two-fold purpose. One was to allow an insurer to make advance payments without admitting liability for a claim and to encourage such payments by eliminating any apprehension on the part of the insurer that evidence of advance payments could be admissible in court to prove liability. The other objective, which is clearly discernible, was to protect an injured party from being misled into believing that a limitation period upon his claim is no longer applicable because the insurer has, in effect, acknowledged that its insured is liable for the claim."

*Id.* at 636. *Duncan* quoted the legislative testimony of a witness, the Insurance Commissioner, who discussed how ORS 12.155 would affect insurers. *Id.* at 637.[4]

---

[4] Duncan quoted the following from the legislative history:

"Insurance Commissioner Bateson testified before the Senate Judiciary Committee on May 10, 1971, as follows:

" 'Section 5 deals with a problem inherent in a complicated and extensive personal injury case where the insurance company makes advance disability payments. In that situation it would be entirely possible for the statute to run and then the company could say, "That's too bad; you didn't file suit and the statute of limitations has expired." House Bill 1299 therefore required that[,] within 30 days after advance payment is made, there must be a notification to the payee that the statute may be running and the making of the advance payment does not suspend it. If there is no such notice, the statute is tolled between the time of the first payment and the time the first notice is actually given.' "

276 Or at 637.

*Duncan,* however, did not involve the question whether the term "person" in ORS 12.155 applied to noninsurers; the payment there had come from an insurer. Rather, the issue in *Duncan* concerned whether that insurer's advance payments solely for property damage had tolled the statutes of limitation for both property damage *and* personal injury damage. 276 Or at 636. The court concluded that it had. *Id.* at 637-38. That holding neither explicitly nor implicitly controls the result here.

Defendants note that the legislative history of ORS 12.155 quoted in *Duncan*—the testimony of the Insurance Commissioner in favor of the act—speaks of only advance payments by insurers. *See* 276 Or at 637 (setting out testimony) (quoted above, 342 Or at 54 n 4). But the statutory text shows that, even if the legislature had a particular problem in mind, it chose to use a broader solution. As this court previously has observed,

> "Statutes ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention. * * * When the express terms of a statute indicate such broader coverage, it is not necessary to show that this was its conscious purpose."

*South Beach Marina, Inc. v. Dept. of Rev.,* 301 Or 524, 531, 724 P2d 788 (1986) (footnote omitted).

In sum, *Duncan* did not hold that ORS 12.155 applies to only insurers, and the court's discussion in *Duncan* of legislative history does not justify the narrow reading of the text for which defendants argue. *Duncan* does not control the outcome of this case.

Defendants also argue that this court's decision in *Ben Rybke Co. v. Royal Globe Insurance Co.,* 293 Or 513, 651 P2d 138 (1982), controls the result here. It is true, as defendant Paynter asserts, that the court in *Ben Rybke* did state that ORS 12.155 and the related advance payment statutes "make more sense if read to refer to claims against the insured." *Id.* at 519. We conclude that *Ben Rybke* does not

control here, however, because that opinion dealt only with what constituted a "statute of limitations" under ORS 12.155. To explain why, we must explore the decision in some detail.

In *Ben Rybke*, the plaintiff was the insured on two fire insurance policies. *See id.* at 515 (plaintiff sought recovery from two insurers); *id.* at 517 (particular statute applied to only fire insurance policies). By statute (ORS 743.660), all fire insurance policies had to include a provision that required any action on the policy to be brought within one year of the date of loss. *Id.* at 517. After plaintiff's business had been damaged by fire, the insurers made advance payments. *Id.* at 515. Plaintiff, however, did not file an action against the insurers until more than one year after the fire. *Id.* The trial court, concluding that the statute of limitations barred the action, entered judgment for the insurers. *Id.*

On appeal, the Court of Appeals affirmed. *Ben Rybke Co. v. Royal Globe Insurance Co.*, 55 Or App 833, 640 P2d 620 (1982). Based on the legislative history quoted in *Duncan*, the Court of Appeals concluded that the legislature had intended ORS 12.155 to apply to advance payments "made by an insurer to a person making a claim against its insured," not to advance payments between insurer and its own insured. *Id.* at 839-40. But, having said that, the Court of Appeals recognized that legislative purpose alone could not resolve the question before it: "The issue then is whether the words used will sustain a broader application of the statute." *Id.* at 840. The Court of Appeals concluded that the text of the statute did not support a broader application because ORS 12.155 and its related statutes repeatedly used terms that sounded in tort, while the dispute between the insurer and its insured in *Ben Rybke* sounded in contract. *Id.* at 841; *see, e.g.*, ORS 12.155(1) (advance payment to "person entitled to recover damages for the death, injury or destruction"). "Plaintiff's action here is an action *on the insurance contract*; it is not an action 'for damages arising from injury or destruction of property' as between this plaintiff and its insurer." 55 Or App at 841 (emphasis in original; quoting renumbered version of ORS 31.565).

This court granted review and affirmed on other grounds. *Ben Rybke*, 293 Or 513. While the Court of Appeals had affirmed because an action on an insurance contract was "not an action 'for damages arising from injury or destruction of property' as between this plaintiff and its insurer," 55 Or App at 841, this court affirmed because the one-year time limit was not a "statute of limitations" within the meaning of ORS 12.155. 293 Or at 520. Although ORS 743.660 required every fire insurance policy to include that one-year time limit, that statute

"is not a statute of limitations. It requires a particular contractual arrangement between the parties to insurance policies. It applies to those parties by operation of contract, whereas a statute of limitations applies to all plaintiffs by operation of statute."

293 Or at 518. Furthermore, "[t]he effect of ORS 743.660 is not to displace the statute of limitations, but only to take from insurers the power to contractually impose a shorter limitation of less than 12 months." *Id.*

The sentence in *Ben Rybke* upon which defendants rely in this case fell within the following paragraph (with the sentence emphasized):

"Arguably, the general purpose of ORS 12.155 might best be advanced by reading the phrase 'statute of limitations' to include alternative contractual provisions. If ORS 12.155 refers to insureds[,] it would be anomalous to permit an insurer to relieve itself of notice responsibilities under ORS 12.155 by the simple expedient of contractually reducing the limitation. That argument fails, however, because, as the Court of Appeals held, the terms of ORS 12.155 and the responsibilities imposed by it apply to third party claimants rather than to insureds. ORS 12.155 applies only to advance payments made pursuant to ORS [31.560] and [ORS 31.565]. If the ORS 12.155 phrase 'each person entitled to recover damages for the death, injury or destruction' is deemed ambiguous for failure to exclude insured persons absolutely, the constructional scales are tipped by reference to the latter two statutes. *Their terms, while also not entirely immune from a larger construction, also make more sense if read to refer to claims against the insured.* The elaborate constructional analysis in the opinion of Chief Judge Joseph for the Court of Appeals is apt on this point. We find

simple reference to the sense of the words of ORS 12.155, [ORS 31.560] and [ORS 31.565] to be most persuasive. Moreover, the legislature could reasonably conclude that written advice of the applicable statute of limitations is desirable for the protection of a claimant other than the insured, but not as necessary for an insured who has already been given written advice of the contractual limitation in the policy itself. Those considerations reinforce our conclusion that the ORS 12.155 phrase 'statute of limitations' is to be given its plain meaning."

293 Or at 518-19 (footnote omitted; emphasis added).

In context, the sentence that defendants emphasize does not support a narrow interpretation of the statutory term "person." As in *Duncan*, this court in *Ben Rybke* discussed ORS 12.155 in the insurance context, but without deciding whether that statute reached other types of cases as well. The quoted paragraph from *Ben Rybke* explains why ORS 12.155 does not apply to claims between an insurer and its insured. The paragraph says little or nothing about when ORS 12.155 *does* apply.

To the extent that the parties and the Court of Appeals concluded that *Duncan* and *Ben Rybke* limited ORS 12.155 to insurers, they read too much into those opinions. Each of those cases involved a dispute between an insurance company and an insured; neither case suggested—much less held—that the term "person" in the statute extended to *only* insurance companies.

We thus agree with Hamilton. Defendants qualify as "person[s] who [made] an advance payment" under ORS 12.155(1), but, under the allegations of the complaint, they did not give timely written notice of the statute of limitations. ORS 12.155(2) thus tolled the statute of limitations. The trial court erred when it dismissed the complaint.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.